UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GREGORY BROWN,

                Plaintiff,

- against -

TEAMSTERS LOCAL 804,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

10 CV 4806 (RJD) (LB)

DEARIE, District Judge.

Plaintiff Gregory Brown, proceeding pro se, brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA") based upon allegedly discriminatory treatment by his labor union, defendant Local 804 of the International Brotherhood of Teamsters (the "Union"). The Union moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that plaintiff's claims are time-barred and that he otherwise fails to state a claim. Because the exhibits attached to plaintiff's complaint demonstrate that he did not exhaust his administrative remedies in a timely manner under Title VII or the ADA before bringing suit, his claims under the statutes are DISMISSED with leave to reopen subject to the conditions set forth in detail below. Plaintiff's "fair representation" claim is DISMISSED with prejudice because it is time barred by the applicable statute of limitations.

## I. BACKGROUND

The Court presumes the following account, cobbled from plaintiff's complaint, supporting exhibits and statement in opposition to the motion to dismiss, to be true for purposes of this motion. From 1990 until May 2008, plaintiff was employed as a porter by Trump Village West ("TVW"), a cooperative building located near the Coney Island boardwalk in Brooklyn. On September 24, 2007, for reasons unclear from the record, plaintiff was granted an authorized

four-week leave of absence from TVW. He remained out past the authorized period. On December 10, 2007, plaintiff submitted a claim for worker's compensation benefits, which apparently was rejected. By letter dated February 11, 2008, noting that his request for a leave extension was incomplete and that his continuing absence was unauthorized, TVW instructed plaintiff to return to work by March 24, 2008, or else his employment would be terminated. Plaintiff responded with a doctor's note indicating that he would need a minimum of eight extra weeks of leave time. By letter dated May 7, 2008, TVW terminated plaintiff's employment. TVW expressly based the termination on plaintiff's "past performance history," his "failure to submit proper documentation requesting the leave" and his "attempt to submit a fraudulent Worker's Compensation claim." (Compl., dkt. #1, at 10.)[1]

Plaintiff filed suit in this Court on October 15, 2010. Plaintiff alleges that during the course of his employment with and termination from TVW, the Union "failed to represent" him and otherwise discriminated against him on account of his race, color, national origin and disability. (Id. at 3.) The complaint lists six dates on which this alleged discrimination occurred: December 1, 2006; April 4, 2007; April 9, 2007; April 11, 2007; February 11, 2008; and May 7, 2008. (Id.) The first four dates relate to a series of Employee Disciplinary Reports filed by TVW supervisors recommending that plaintiff be warned or suspended for dereliction of his job duties, including performing substandard maintenance work and taking extended, unauthorized breaks during the workday. On the basis of the conduct alleged in these reports, on April 11, 2007, TVW suspended plaintiff for five days without pay. Plaintiff appears to contend that the disciplinary reports, which he attaches to the complaint, were motivated by TVW's "discrimination and harassment." (Opp., dkt. #12, at 3.)

---

[1] Citations to plaintiff's complaint ("Compl.") and opposition to the motion to dismiss ("Opp.") refer to the electronically numbered pages within the documents filed on ECF.

2

Plaintiff similarly alleges that his suspension by TVW was an act of unlawful retaliation. In an April 16, 2007, letter to plaintiff, TVW writes that he should "rectify the behavior that lead [sic] up to this suspension." (Compl. 12.) Plaintiff counters that he was suspended for engaging in "protected concerted activities and/or union activities, including filing grievances." (Opp. 3.) The complaint and exhibits contain no other reference to a grievance alleging discrimination filed prior to plaintiff's suspension from TVW. Plaintiff submits documentation relating to an April 13, 2007, charge to the National Labor Relations Board ("NLRB"), in which he informed the NLRB, after the fact, that TVW "suspended [him] because he engaged in protected concerted activities and/or union activities, including filing grievances." (Compl. 21.) In his NLRB affidavit, plaintiff insists that he notified the Union via letter of his "mistreatment by management" on April 11, 2007, the day of his suspension. (Id. at 27.) That may have happened; the complaint's exhibits suggest that plaintiff faxed such a letter to the Union's shop steward on May 18, 2007. (See id. at 17-19.) Plaintiff also appears to have sent a grievance letter to the Union on July 3, 2007. In the letter, he complains that TVW's superintendent falsely accused him of having a twenty-minute personal conversation with a tenant during working hours. (Id. at 20.)

TVW is not a named defendant in this matter; rather, it is the Union's alleged failure to act upon TVW's claimed retaliatory and discriminatory conduct that is at issue. Accordingly, plaintiff asserts that the "union and management have ignored my complaints" as well as unspecified "contractual arrangements [and] rules." (Id. at 5.) Plaintiff attributes the Union's conduct to racial discrimination in favor of Latino members. According to plaintiff, under a newly hired Latino superintendent, Latino employees received lighter work schedules and fewer work assignments. When African American and white coworkers complained, the Union

3

allegedly failed to respond. By contrast, plaintiff alleges that "[w]henever the Latino personnel complained, the union addressed all their problems and complaints." (Opp. 4.) Plaintiff also contends that the Union "did nothing" when TVW "terminated" him after he allegedly "sustained permanent job related injuries" to both hands.[2] (Id. at 2.) He adds that he has "not received any termination pay, accrued vacation credits or sick time." (Compl. 5.)

On August 18, 2008, plaintiff filed a charge against the Union with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff does not enclose a copy of the charge with his complaint. By response letter dated August 30, 2008, the EEOC characterizes the charge as asserting that the Union "treats Latino members preferentially, in violation of Title VII." (Id. at 6.) Regarding this claim, the EEOC writes that plaintiff "provided summaries and documents concerning a number of events that took place in early 2007." (Id.) "Specifically, [he] allege[d] that that the assistant super was replaced by a Latino, that [he] w[as] suspended for five days, and that the union did not represent" him either then or "when [he] w[as] written up by management." (Id.) According to the EEOC, the Union responded that it had twice "intervened" for plaintiff with good result: In 2001, it filed a grievance and successful arbitration on plaintiff's behalf; and in April 2007, it reduced the aforementioned suspension from five days to three. The EEOC continues, however:

> According to the documents you provided, you went on medical leave on October 24, 2007, did not return to work after six months, and were then terminated. Your charge was filed on August 18, 2008. The statute of limitations under our laws is 300 days, thus any events that occurred prior to October 23, 2007 are untimely.

---

[2] At a hearing held on June 24, 2010, the New York State Worker's Compensation Board awarded plaintiff $40,870.00 in benefits, covering the period from October 2007 through May 2009, for a "Permanent Partial Disability" relating to a loss of function in both hands.

4

(Id.) The EEOC concludes: "In view of the fact that you have been on medical leave for the entire period, there are no timely charges for the Commission to investigate." (Id.) The EEOC dismissed plaintiff's charge and issued a Right to Sue letter to plaintiff.

## II. DISCUSSION

"A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). As a result, "'pro se submissions must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, the requirement that a complaint plead a plausible claim applies equally to pro se filings. See Harris v. Mills, 572 F.3d 66, 71 72 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

Because lack of exhaustion prior to filing a Title VII or ADA claim is "an affirmative defense, defendant[] bear[s] the burden of establishing the plaintiff's failure to timely exhaust his administrative remedies." Cohn v. KeySpan Corp., 713 F. Supp. 2d 143, 155 (E.D.N.Y. 2010). "[A] complaint can be dismissed," however, "pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint." Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir.2003). Accordingly, a demonstrated failure to exhaust administrative remedies within the time allowed may "properly [be] characterized as [the] failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007); see also Fernandez v. Chertoff, 471 F.3d 45, 58 (2d Cir. 2006). For

purposes of the rule, the complaint includes its numerous attachments. See Fed. R. Civ. P. 10(c); L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011).

A. Title VII Exhaustion

Title VII prohibits workplace discrimination on the basis of an individual's "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2. Although the statute applies primarily to employers, an employee may "establish a Title VII claim concerning representation by a union of its member's interests."[3] Oparaji v. United Fed. of Teachers, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006). Assuming without deciding that plaintiff's allegations state a Title VII claim against the Union, such a claim is barred for the failure to submit a timely EEOC charge relating to any of the instances of unlawful conduct alleged.

As a prerequisite to filing a Title VII claim in New York, an employee must submit a charge to the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); see Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 326-28 (2d Cir. 1999). "This statutory requirement is analogous to a statute of limitations." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996). "When a plaintiff fails to file a timely charge with the EEOC," therefore, "the claim is time-barred." Butts v. City of N.Y. Dep't of Housing Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir.1993), superseded on other grounds by statute, Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (2001).

Plaintiff submitted an EEOC charge on August 18, 2008. "Thus, only events that occurred during the 300-day period prior to filing – that is, on or after [October 23, 2007] – are actionable under Title VII." Id. Given this limitations period, the EEOC properly refused to investigate claims based on alleged events leading up to and including plaintiff's April 2007

---

[3] And although the Court does not reach the merits of plaintiff's Title VII or ADA claims, it bears noting that a claim for retaliation based on engaging in "protected concerted activities and/or union activities" more appropriately targets plaintiff's employer than it does the Union. (See Opp. 3.)

suspension from TVW. See, e.g., Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980) ("By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination.").

In addition, plaintiff cannot bring suit under Title VII for events occurring in 2008 because he did not allege such discrimination in his EEOC charge. Nor could plaintiff file a timely charge now, years after the fact. The last two dates on which the Union allegedly discriminated against plaintiff – February 11, 2008, and May 7, 2008 – are the dates on which TVW sent plaintiff letters relating to his medical leave and termination. (See Id. at 10-11.) Based on plaintiff's submissions, it is unlikely, though uncertain given the actual EEOC charge's absence from the record, that he raised substantive allegations with the EEOC regarding these events. In its response, the EEOC writes that plaintiff "provided summaries and documents concerning a number of events that took place in early 2007." (Compl. 6.) And although certain documents submitted by plaintiff reveal that he "went on medical leave on October 24, 2007, did not return to work after six months, and w[as] then terminated," the EEOC nevertheless found "no timely charges . . . to investigate." (Id.)

Because Title VII exhaustion is not jurisdictional, however, strict adherence is not always required. See, e.g., Boos v. Runyon, 201 F.3d 178, 182 (2d Cir. 2000). Specifically, a district court may entertain a Title VII claim "based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." Butts, 990 F.2d at 1401. For example, without first bringing the claim to the EEOC's attention, a plaintiff may claim "retaliation by [her] employer . . . for filing [the] EEOC charge" in question. Id. at 1402. Likewise, a plaintiff may bring suit based on "further incidents of discrimination carried out in precisely the same

manner alleged in the EEOC charge," without exhausting remedies regarding the later conduct. Id. at 1402-03.

In this case, plaintiff's leave and termination occurred months before he submitted his August 2008 EEOC charge. In the charge, plaintiff could have alleged discrimination by the Union based on those events. He did not; he chose to address only his years-old suspension, while omitting any meaningful reference to his more recent termination. With respect to the latter, the EEOC had no occasion to pursue "the principle benefits of [its] involvement," namely the potential "mediation of claims and conciliation." Butts, 990 F.2d at 1402. Thus, the Court declines to excuse plaintiff's failure to include such existing allegations in his EEOC charge. See Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 315 (S.D.N.Y. 2003) ("The 'reasonably related' doctrine does not excuse a plaintiff's failure to include allegations in his administrative complaint where those allegations pertained to conduct that had occurred before the administrative complained was filed.").

It is implausible, moreover, that plaintiff's EEOC charge suffers from "loose pleading." Butts, 990 F.2d at 1402 (authorizing courts to apply the "reasonably related" doctrine "where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'" (quoting Smith v. Am. President Lines, Ltd., 571 F.2d 102, 107 n.10 (2d Cir. 1978))). Upon investigating plaintiff's suspension, the EEOC more than likely would have learned of his later termination, for which his "past performance history" was a proffered justification. (Compl. 10.) By omitting discussion of the termination or medical leave from his charge, however, plaintiff led the EEOC to believe that he was not pursuing claims against the Union arising from these events. See Cooper v. Xerox Corp., 994 F. Supp. 429, 436 (W.D.N.Y. 1998) (stating that, in deciding the

scope of an EEOC charge, the "critical analysis is whether there is any explanation or description supporting a particular claim"). Indeed, plaintiff's raising only untimely allegations in his charge forestalled any investigation whatsoever. Although aggrieved employees are afforded some latitude in exhausting their administrative remedies, an employee may not – intentionally or otherwise – bring a sampling of unrelated prior incidents to the EEOC's attention before suing on the whole lot. Thus, plaintiff's Title VII claim must be dismissed.

B. ADA Exhaustion

With certain exceptions, the ADA prohibits materially altering the "terms, conditions, and privileges of employment," including "the hiring, advancement, or discharge of employees[,] . . . on the basis of disability." 42 U.S.C. § 12112(a). "A labor union may not discriminate against an individual because he or she has a disability within the meaning of the ADA." Nweke v. Prudential Ins. Co. of Am., 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998). Plaintiff contends that the Union did just this. (See Compl. 3.) More precisely, he asserts that the Union "did nothing" when TVW "terminated" him after he "sustained permanent job related injuries" to both hands. (Opp. 2.) Given plaintiff's pro se status, the Court construes these allegations to form an ADA claim against the Union. That claim, once again, is dismissed for plaintiff's failure to exhaust administrative remedies.

Like Title VII, the ADA requires a plaintiff claiming discrimination in New York to file an EEOC charge within 300 days of the allegedly unlawful occurrence. See 42 U.S.C. § 12117(a) (providing that the procedures set forth in Title VII—42 U.S.C. § 2000e-5, in particular—apply to claims arising under the ADA); Tewksbury, 192 F.3d at 325. Plaintiff's ADA claim may be read to concern conduct, or the lack thereof, undertaken by the Union after his termination in May 2008. Although plaintiff filed an EEOC charge a few months later, there

is no indication that, in the charge, he mentioned the ADA or even alluded to disability discrimination. And although "the documents [he] provided" to the EEOC reveal that he "went on medical leave on October 24, 2007, did not return to work after six months, and w[as] then terminated," (id.), plaintiff apparently did not endeavor to link these documents to mistreatment by the Union.

According to the EEOC's response, plaintiff complained only that the Union "treats Latino members preferentially, in violation of Title VII." (Compl. 6.) Further, plaintiff's charge "concern[ed] a number of events that took place in early 2007." (Id.) An EEOC charge mentioning only "violation[s] of Title VII" taking place "in early 2007" is not a one-size-fits-all vehicle for exhaustion of remedies with respect to differing forms of discrimination allegedly occurring years later. See, e.g., MacEntee v. IBM, 783 F.Supp.2d 434, 442 (S.D.N.Y. 2011) ("Title VII does not encompass claims for employment discrimination on the basis of disability."); Chen v. Citigroup Inv., Inc., No. 03 CV 6612 (GBD), 2004 WL 2848539, at *2 (S.D.N.Y. 2004) ("Regardless of whether plaintiff's Title VII claim is based on race, color, sex, religion and/or national origin, it is not reasonably related to her disability claim."). Hence, plaintiff's ADA claim must be dismissed.

C. Fair Representation Claim

The complaint boils down to the contention that the Union "failed to represent" plaintiff while TVW management unlawfully disciplined him and terminated his employment on account of some combination of his race, disability and engagement in protected activity.[4] (Compl. 3.) In addition, plaintiff alleges that the "union and management . . . ignored the contractual agreements which both have signed." (Id. at 5.) Thus, the complaint may fairly be read to assert

---

[4] Courts increasingly require a plaintiff to plead a breach of the duty of fair representation to state a claim against a labor union under Title VII or the ADA. See, e.g., Nweke, 25 F. Supp. 2d at 220; Oparaji, 418 F. Supp. 2d at 146.

10

one or more breaches of the Union's duty of fair representation in the face of corresponding breaches of contract by TVW. This claim, like the discrimination claims, is also time-barred.

"Under federal labor law, an employee may bring a complaint against her union and/or her employer alleging (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer." White v. White Rose Food, 128 F.3d 110, 113 (2d Cir. 1997) ("The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both."). This "'hybrid' cause of action [is] governed by a six-month statute of limitations." Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 67 (2d Cir. 1995) (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983)); see also Duran v. Jamaica Hosp., 216 F. Supp. 2d 63, 70 (E.D.N.Y. 2002). "[T]he statute of limitations begins to accrue ... when the employee had actual or constructive notice that the union has breached its duty of fair representation." Demchik v. Gen. Motors Corp., 821 F.2d 102, 105 (2d Cir.1987). "[A] breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 165 (2d Cir.1989).

Under these standards, all of plaintiff's potential fair representation claims accrued well prior to April 15, 2010, six months before he filed this lawsuit.[5] Claims relating to plaintiff's April 2007 suspension by TVW accrued, at the latest, by April 13, 2007, "the date of his NLRB charge." Kavowras v. New York Times Co., 328 F.3d 50, 55 (2d Cir. 2003). "In his NLRB charge, [plaintiff] alleged in a general manner the same misconduct by the Union which he charged in his complaint." Id. Furthermore, any claim arising from plaintiff's May 2008 termination accrued on or shortly after that date, when the Union, according to plaintiff, "did nothing." (Opp. 2.) Absent an allegation that the Union "took any steps to" pursue his claim,

---

[5] Plaintiff asserts that the Union "is not still committing these acts against me." (Compl. 2.)

plaintiff "should have known at some point in the ensuing ... months that the Union was not representing him." Cohen, 68 F.3d at 69 ("The inaction of the Union ... does not permit the statute of limitations to be tolled."). By April 2010, two *years* after his termination, it is safe to assume that the plaintiff "should have known," Id., that the Union was not going to press a claim against TVW.

The pendency of an EEOC investigation does not extend the limitations period for filing a fair representation claim. The latter judicial cause of action is "separate from and independent of the more elaborate and time-consuming procedures of Title VII." Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 466 (1975). "'The fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent.'" Woods v. Dunlop Tire Corp., 972 F.2d 36, 40 (2d Cir. 1992) (quoting Johnson, 421 U.S. at 466). Thus, plaintiff's fair representation claim must also be dismissed.

D. Possibility of Amendment

Because the plaintiff failed to timely exhaust his Title VII or ADA claims, he is not "entitled to offer evidence to support his claims." Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir.2005). In cases involving pro se plaintiffs, however, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiff does not offer the single document – the August 2008 EEOC charge – that might refute the otherwise clear indication that he did not timely exhaust his administrative remedies. Within forty-five (45) days of the date on this Memorandum and Order, plaintiff may provide the Court with a copy of the EEOC charge and all supporting documents, which the Court will then evaluate. If plaintiff fails to submit a copy of the charge, or if the documentation

submitted by plaintiff confirms that his claims are untimely, then the action will be dismissed with prejudice.

### III. CONCLUSION

For the reasons set forth above, plaintiff's Title VII and ADA claims are DISMISSED with leave to reopen subject to the instructions in the preceding paragraph. Plaintiff's "fair representation" claim is DISMISSED with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
       January _11_, 2012

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge